# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | **CRIMINAL NO.** |
| **PLAINTIFF** | ) | |
| | ) | **3:24-CR-00108 (SRU)** |
| **VS.** | ) | |
| | ) | |
| **KONSTANTINOS DIAMANTIS, AKA "KOSTA"** | ) | |
| **DEFENDANT** | ) | **SEPTEMBER 4, 2026** |

## DEFENDANT'S SENTENCING MEMORANDUM

Defendant Konstantinos Diamantis respectfully submits this memorandum in advance of sentencing. The advisory Sentencing Guidelines call for imprisonment of 121 to 151 months. PSR ¶ 162. That range is an important consideration, but it does not account adequately for Mr. Diamantis's age, history, present circumstances, financial ruin, loss of his profession and public standing, negligible risk of recidivism, or the severe collateral consequences he has already experienced.

Mr. Diamantis does not minimize the seriousness of the jury's verdict or his breach of the public trust. He asks the Court, however, to impose an individualized sentence based on all the circumstances rather than treating the advisory range as presumptively appropriate. A non-custodial sentence, coupled with rigorous conditions of supervision, would impose substantial punishment while addressing deterrence, public protection, and rehabilitation.

**I. Governing Sentencing Principles**

The Sentencing Guidelines are advisory, not mandatory. The Court must begin by correctly calculating the applicable range, but it must then make an independent assessment of the sentence warranted under 18 U.S.C. § 3553(a). *United States v. Booker*, 543 U.S. 220, 261 (2005). A Guidelines sentence is not presumptively reasonable at the district-court level, and the Court must determine what sentence is appropriate for the individual defendant and offense before it. *United States v. Dorvee*, 616 F.3d 174, 183 (2d Cir. 2010).

The Court therefore has broad discretion to decide the appropriate punishment for this defendant and these offenses. *United States v. Savoca*, 596 F.3d 154, 160 (2d Cir. 2010). That discretion requires meaningful consideration of the advisory range, but it also permits the Court to conclude that the range gives excessive weight to particular offense characteristics or insufficient weight to circumstances bearing directly on punishment, deterrence, incapacitation, and rehabilitation. *United States v. Powell*, 249 F. Supp. 3d 617, 621 (E.D.N.Y. 2017); *United States v. Cavera*, 550 F.3d 180, 196 (2d. Cir. 2008).

The controlling substantive command is the parsimony clause: the Court must impose a sentence "sufficient, but not greater than necessary" to accomplish the purposes identified in § 3553(a)(2). *Holguin-Hernandez v. United States*, 589 U.S. 169, 175 (2020). The Second Circuit treats that principle as the lodestar of federal sentencing. *United States v. Pollock*, 139 F.4th 126, 145 (2d Cir. 2025). The inquiry is holistic and individualized; the Court may assign weight to each statutory consideration based on the totality of the circumstances and its firsthand assessment of the defendant. *United States v. Johnson*, 567 F.3d 40, 51 (2d Cir. 2009); *United States v. Cavera*, 550 F.3d 180, 196 (2d Cir. 2008).

The Court must consider:

1. The nature and circumstances of the offense and Mr. Diamantis's history and characteristics, 18 U.S.C. § 3553(a)(1);
2. The need for the sentence to reflect the seriousness of the offense, promote respect for the law, and provide just punishment, id. § 3553(a)(2)(A);
3. The need to afford adequate deterrence, id. § 3553(a)(2)(B);
4. The need to protect the public from further crimes by Mr. Diamantis, id. § 3553(a)(2)(C);
5. The need to provide educational or vocational training, medical care, or other correctional treatment effectively, id. § 3553(a)(2)(D);
6. The kinds of sentences available, id. § 3553(a)(3);
7. The advisory Guidelines range and pertinent policy statements, id. § 3553(a)(4)–(5);
8. The need to avoid unwarranted sentencing disparities, id. § 3553(a)(6); and;
9. The need to provide restitution to any victims, id. § 3553(a)(7).

The extent of the requested variance makes a complete explanation especially important. In a serious economic-crime case, a substantial variance to a noncustodial sentence must be supported by a thorough and persuasive explanation addressing punishment, deterrence, and sentencing disparities. *United States v. Negroni*, 638 F.3d 434, 446 (2d Cir. 2011). Mr. Diamantis accordingly does not rely on any single mitigating circumstance. His request rests on the combined force of his age, lack of physical dangerousness, loss of the position that enabled the conduct, financial ruin, loss of professional status, diminished earning capacity,

family circumstances, and the limited additional sentencing value of a decade or more in prison.

**II. Advisory Guidelines Calculation and Financial Circumstances**

Mr. Diamantis has reviewed the Presentence Report with counsel and does not challenge its Guidelines calculations. The resulting advisory range is 121 to 151 months of imprisonment. PSR ¶ 162. Although the Government could have advocated a more aggressive loss-amount theory, that approach likely would have required post-trial evidentiary proceedings. The range ultimately calculated in the PSR remains substantial.

The Guidelines calculation does not end the sentencing inquiry. Even when a court correctly calculates the range, it may not presume that a sentence within that range is reasonable for the defendant before it. *United States v. Dorvee*, 616 F.3d 174, 183 (2d Cir. 2010). The Guidelines are one statutory consideration among several, and the Court must determine independently whether the imprisonment they recommend is greater than necessary to accomplish the purposes of sentencing. *United States v. Powell*, 249 F. Supp. 3d 617, 621 (E.D.N.Y2017).

The PSR further concludes that Mr. Diamantis cannot pay a fine within the advisory range. PSR ¶ 160. He therefore respectfully requests that the Court impose no fine. His negative net worth, outstanding tax obligations, consumer debt, encumbered residence, loss of earning capacity, and pending legal expenses confirm that a fine would not serve a realistic punitive or compensatory purpose.

The PSR estimates the annual cost of incarceration at $51,711. PSR ¶ 177. Cost alone does not determine a lawful sentence. It is relevant, however, when the purposes of punishment can be achieved through less restrictive alternatives. The

principle of parsimony should apply to the duration and necessity of imprisonment, not merely to the overall sentence.

**III. A Non-Incarceratory or Substantially Below-Guidelines Sentence Is Sufficient**

Mr. Diamantis is now seventy years old and effectively impecunious. His convictions have brought about the collapse of his professional, financial, and public life. He has relinquished his law license. His career in public service has ended. His residence has little or no equity and is encumbered by a mortgage, a line of credit, and other debt. He owes money to the Internal Revenue Service and the Connecticut Department of Revenue Services and carries substantial consumer debt. His net worth is negative. PSR ¶ 154.

Mr. Diamantis also faces a second trial in December, 2026. Because of his indigency, counsel has been invited to seek compensation under the Criminal Justice Act. If incarcerated, he will have no meaningful opportunity to rebuild his finances. His state pension is likely to be forfeited, and his Social Security income—approximately $2,600 per month—will cease during a qualifying period of incarceration and resume only after his release. At an advanced age and without a law license or public position, his prospects for future employment are slight.

His family circumstances offer little financial security. Mr. Diamantis is unmarried, and his children presently cannot commit to providing long-term shelter and care. His youngest child continues to depend on him for support and care while struggling to establish her own financial independence. A lengthy sentence would likely return Mr. Diamantis to the community at a greatly advanced age, without assets, a profession, stable income, or a dependable support structure.

These circumstances do not erase the offenses. They do, however, bear directly on the amount of punishment necessary, the likelihood of recidivism, the need for incapacitation, and the practical consequences of a lengthy prison term.

### A. The Nature and Circumstances of the Offenses Are Serious, but the Court Must Assess Them in Their Full Context

The jury found that Mr. Diamantis and cooperating witnesses participated in mutually beneficial financial arrangements through which Mr. Diamantis used his position of trust and governmental authority to provide vendors and contractors access to public programs and funding. The trial testimony offered a dispiriting view of handshakes, meals, informal understandings, and transactional communications surrounding the allocation of public work.

The conduct constituted a serious breach of public trust.

Mr. Diamantis does not contend that the absence of violence makes corruption harmless. Public corruption damages confidence in government and warrants meaningful punishment. Nevertheless, these offenses did not involve violence, weapons, threats, or physical injury. The distinction matters when the Court assesses incapacitation, correctional needs, and the severity of punishment required.

The Court should also distinguish between recognizing the seriousness of the offenses and assuming that the advisory range is the only sentence capable of expressing that seriousness. A judgment of conviction, stringent supervision, financial restrictions, community service, home detention, and the permanent loss of professional and public standing are substantial sanctions. The Court can acknowledge the gravity of the verdict without imposing a term exceeding ten years.

**B. Mr. Diamantis's History and Characteristics Support a Major Variance**

Mr. Diamantis is a military veteran, a former state legislator, a former attorney, and a former senior member of the administration of Governor Ned Lamont. Those accomplishments do not excuse the misuse of public authority. Indeed, his status made the breach of trust more serious. But § 3553(a)(1) requires consideration of the whole person, not solely the conduct underlying the conviction.

For much of his adult life, Mr. Diamantis served in the military, law, elected office, and state government. The sentence should reflect both the seriousness of his offenses and the entirety of the life in which they occurred.

Mr. Diamantis's age is particularly relevant when considered with his changed circumstances. Courts may account for advanced age when assessing a defendant's likelihood of reoffending and the need for incapacitation. Age and physical condition are part of the defendant's history and characteristics and may support a variance even if they do not justify a formal Guidelines departure. *United States v. Tosti*, 733 F.3d 816, 824 (2d Cir. 2013).

Mr. Diamantis no longer holds public office, governmental authority, or a law license. He has lost the access and professional position that made the conduct possible. His age, changed circumstances, and permanent removal from positions of public trust make repetition of similar conduct highly unlikely.

**C. Financial Ruin and Other Collateral Consequences Contribute to Just Punishment**

A defendant's loss of professional credentials, pension benefits, employment, and standing may properly inform the Court's assessment of just punishment and deterrence.

Here, the consequences are extensive and lasting:

1. Mr. Diamantis has relinquished his law license;
2. His public career and professional reputation have ended;
3. His net worth is negative. PSR ¶ 154;
4. His residence is heavily encumbered;
5. He owes federal and state taxes and substantial other debt;
6. His ability to earn future income is severely diminished;
7. His pension is likely to be forfeited.

These consequences are not offered as a substitute for the Court's judgment. Nor does Mr. Diamantis claim that professional embarrassment alone warrants leniency. Rather, they form part of the real punishment already produced by the prosecution and convictions. Because § 3553(a) requires a sentence no greater than necessary, the Court may consider whether additional years of imprisonment would add proportionate punitive value after these irreversible losses.

A demanding noncustodial sentence would remain punitive. Probation or supervised release may include home detention, restrictions on employment and financial activity, community service, reporting requirements, and other conditions reasonably related to the statutory purposes of sentencing. Such restrictions would publicly mark the seriousness of the offenses while permitting Mr. Diamantis to remain responsible for his basic needs and lawful obligations.

### D. General Deterrence Requires a Serious Sentence, but Not Necessarily a Decade of Imprisonment

General deterrence is important in public-corruption and economic-crime cases because such offenses may involve deliberation and calculation. Mr.

Diamantis does not ask the Court to disregard that consideration. He asks the Court to determine the marginal deterrent value of the advisory range compared with a severe but substantially lesser sentence.

The public consequences here are unmistakable. A former legislator, attorney, military veteran, and senior state official has been prosecuted, tried, convicted, publicly disgraced, financially ruined, stripped of his profession, and permanently excluded from positions of public trust. Those consequences convey a powerful warning: abuse of governmental authority can destroy a lifetime of professional accomplishment and financial security.

The Second Circuit recognizes that deterrence requires a case-specific judgment and that district courts may evaluate how much punishment is necessary to deter similar conduct. *United States v. Cavera*, 550 F.3d 180, 196 (2d Cir. 2008). The Court therefore need not assume that a 121-month sentence produces materially greater deterrence than a noncustodial sentence with restrictive conditions or a substantially shorter prison term.

At the same time, because a probationary sentence in a serious white-collar case requires a persuasive justification, the Court should expressly connect the requested sentence to the unusual combination of circumstances present here. This is not a request for leniency based merely on social standing, prior professional success, or the ordinary consequences of conviction. It rests on Mr. Diamantis's advanced age, comprehensive financial collapse, permanent loss of the means and opportunity to repeat the conduct, limited future earning capacity, lack of physical dangerousness, and the availability of restrictive sanctions outside prison.

### E. Specific Deterrence and Protection of the Public Require Little or No Incapacitation

The relevant inquiry under § 3553(a)(2)(C) is the need to protect the public from further crimes by this defendant. Mr. Diamantis is seventy years old. He no longer holds governmental power or a professional license. His reputation and finances are devastated, and he has no realistic prospect of returning to a comparable position of authority.

The offenses depended on access, relationships, professional standing, and governmental influence that no longer exist. A sentence restricting Mr. Diamantis from public employment, contracting, fiduciary activity, and specified financial dealings would directly address the circumstances connected to the offenses. Financial disclosure and monitoring could provide additional protection.

Accordingly, incarceration is unnecessary to incapacitate Mr. Diamantis. The public can be protected through conditions tailored to the actual risk presented, including:

1. Home detention or location monitoring for a period determined by the Court;
2. A prohibition on holding public office or public employment;
3. Restrictions on lobbying, government contracting, procurement activity, and handling public funds;
4. Restrictions on fiduciary or financial activity;
5. Financial disclosure and monitoring;
6. Community service appropriate to Mr. Diamantis's age and abilities; and
7. Any restitution or payment conditions consistent with his financial capacity.

**F. Incarceration Offers Limited Rehabilitative Benefit**

Nothing in the current record indicates that Mr. Diamantis requires vocational training or correctional treatment that can be delivered only in prison. At age seventy, he does not need institutional vocational preparation for a new career. His principal needs are maintaining lawful stability, complying with supervision, meeting family responsibilities to the extent possible, and managing the practical consequences of financial ruin.

Community-based supervision would permit the Court to monitor his conduct while requiring accountability. It would also allow Mr. Diamantis to address his basic living expenses rather than returning from a lengthy prison term at an advanced age with no assets or stable housing.

**G. Available Alternatives Can Provide Substantial and Visible Punishment**

A non-custodial sentence need not be lenient. The Court may construct a sentence that restricts liberty, imposes accountability, protects the public, and reinforces respect for the law. Depending on statutory eligibility and the Court's assessment, appropriate components could include:

1. Probation for the maximum lawful term;
2. Home detention, with location monitoring;
3. Community service tailored to Mr. Diamantis's physical abilities;
4. Restrictions on public employment, government contracting, lobbying, and fiduciary activity;
5. Financial disclosure, monitoring, and limitations on new credit or financial transactions;

6. Restitution consistent with applicable law and Mr. Diamantis's ability to pay;
7. A prohibition against profiting from the offenses; and
8. Any additional conditions reasonably related to deterrence, public protection, and rehabilitation.

These alternatives would preserve Mr. Diamantis's ability to secure housing, meet basic needs, support his youngest child to the extent possible, and comply with financial obligations. They would also avoid the substantial public cost of incarceration identified in the PSR. PSR ¶ 177.

**IV. The Requested Sentence Would Not Create an Unwarranted Disparity**

Section 3553(a)(6) requires the Court to consider unwarranted disparities among defendants with similar records who have been found guilty of similar conduct. That provision does not require mechanical adherence to the advisory range. The Guidelines promote national consistency, but the statute permits different sentences when material differences among defendants warrant them.

Any comparison should account for the nature of the conduct, loss amount, role, abuse of trust, criminal history, acceptance of responsibility, cooperation, age, health, collateral consequences, and risk of recidivism.

Mr. Diamantis recognizes that he proceeded to trial and is not entitled to benefits reserved for defendants who accept responsibility or cooperate. His request does not depend on treating him as if he had pleaded guilty. It instead asks the Court to consider whether, after accounting for those distinctions, his individualized circumstances make the advisory range greater than necessary.

A substantial variance requires a clear chain of reasoning connecting the mitigating circumstances to the sentence imposed. *United States v. Negroni*, 638

F.3d 434, 446 (2d Cir. 2011). That reasoning is present here: advanced age and the permanent loss of governmental and professional access reduce the need for incapacitation; financial and professional ruin increase the punishment already experienced; restrictive supervision can protect the public; and a judgment incorporating significant liberty restrictions can provide general deterrence without imprisonment exceeding ten years.

**V. A Non-Incarceratory Sentence Would Promote Respect for the Law**

Respect for the law is advanced by punishment that is serious, transparent, and proportionate. It is not advanced by treating the advisory range as mandatory or by imposing imprisonment beyond what the statutory purposes require. The Court's obligation is to exercise individualized judgment and impose the least severe sentence sufficient to accomplish those purposes.

Mr. Diamantis's offenses involved an abuse of public trust. The sentence must acknowledge that harm. But it should also recognize that he is a seventy-year-old man who has lost his profession, public standing, financial security, and realistic opportunity to regain his former life. A noncustodial sentence with stringent conditions would not restore what he has lost or relieve him of the judgment of conviction. It would subject him to continuing judicial control while reserving incarceration for the extent, if any, that the Court finds genuinely necessary.

**VI. No Fine Should Be Imposed**

The PSR concludes that Mr. Diamantis cannot pay a fine within the Guidelines range. PSR ¶ 160. His net worth is negative. PSR ¶ 154. He has little or no equity in his residence, substantial secured and unsecured debt, federal and state tax obligations, severely diminished earning capacity, and significant ongoing legal expenses.

A fine would not enhance deterrence in any meaningful way and would impair Mr. Diamantis's ability to meet basic living expenses and any restitution obligation imposed by the Court. He therefore respectfully requests that the Court impose no fine.

**VII. Conclusion**

Mr. Diamantis stands before the Court at seventy years of age, convicted of serious offenses involving an abuse of public trust. He does not ask the Court to disregard the verdict or minimize the harm caused by corruption. He asks the Court to impose punishment based on the whole record and the statutory command that the sentence be sufficient, but not greater than necessary.

The advisory range of 121 to 151 months would consume much of Mr. Diamantis's remaining life. It would incarcerate a nonviolent, elderly defendant after the governmental access and professional status that enabled the offenses have permanently disappeared. It would add to punishment that already includes financial ruin, the loss of his law license and career, public disgrace, diminished income, likely pension forfeiture, and severely limited prospects for future employment.

A non-custodial sentence incorporating stringent supervision, home detention, financial monitoring, community service, and restrictions on public and fiduciary activity would provide meaningful punishment, protect the public, and promote deterrence. It would also reflect an individualized application of § 3553(a) rather than a presumption that the advisory range is appropriate.

For those reasons, Mr. Diamantis respectfully requests that the Court impose a non-custodial sentence, if legally available, with appropriate restrictive conditions

and no fine. Alternatively, he requests a sentence substantially below the advisory range and no longer than necessary to satisfy the purposes of 18 U.S.C. § 3553(a).

DEFENDANT,
KONSTANTINOS DIAMANTIS, AKA "KOSTA"

**By: /s/ Norman A. Pattis, Esq.**
Norman A. Pattis, Esq.
PATTIS & PAZ, LLC
171 Orange St., 2nd Floor
New Haven, CT 06510
Tel: 203-393-3017
Fax: 203-393-9745
Email: npattis@pattispazlaw.com
Federal Bar No.: ct13120

**CERTIFICATION**

I hereby certify that on September 4, 2026, a copy of the foregoing was filed electronically. Notice of this filing was sent by email to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

**/s/ Norman A. Pattis, Esq.**